IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC AMARO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No.15-973-SLR |
| | ) |
| NEAL KIRK, et al., | ) |
| | ) |
| Defendants. | ) |

Eric Amaro, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: May 12, 2017
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Eric Amaro ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, proceeds pro se and has been granted leave to proceed in forma pauperis. When he commenced this action, plaintiff was a pretrial detainee at the Sussex Correctional Institution ("SCI"), Georgetown, Delaware. Plaintiff filed this lawsuit on October 26, 2015 pursuant to 42 U.S.C. § 1983. (D.I. 2) Presently before the court are several motions filed by the parties including motions to preserve evidence, request for counsel, and defendants' motion for summary judgment. (D.I. 40, 44, 49, 54) The court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

### A. The Complaint

The complaint alleges that, on August 20, 2015, following an altercation between correctional officers and inmate James Hight ("Hight"), plaintiff's tier was on lockdown. (D.I. 1) While on lockdown, defendant Kirk Neal ("Neal")[1] came to plaintiff's cell and ordered him to open the door. Plaintiff alleges that Neal threatened him and plaintiff told Neal that he had done nothing to deserve the way Neal was speaking to him. Plaintiff alleges that Neal grabbed him by the shirt, punched him, and scratched his neck. Plaintiff was ordered to stay in his cell until the 4 to 12 shift officers arrived. Plaintiff alleges that he was denied medical care prior to the time the 4 to 12 shift officers arrived.

---

[1]The complaint identifies Neal as "Neal Kirk" rather than Kirk Neal.

Following the incident, plaintiff submitted a grievance. He alleges that after he submitted the grievance, he was fired from his job by defendant Cpl. Amos Callaway ("Callaway"). In addition, Neal told plaintiff that he had obtained plaintiff's address and threatened plaintiff that "whatever [plaintiff] did to his family in jail, . . . they would take it out on [plaintiff's] family in the street." Plaintiff also alleges that Callaway and Neal yelled out plaintiff's address and his girlfriend's name

**B. Facts as Presented by the Parties**

Incident reports indicate that on August 20, 2015, after inmate Hight took a cordless phone from C/O Adam Scott's ("Scott") desk, Scott ordered Hight to return the phone and to "lock in." (D.I. 55-1 at 2, 6, 10) C/O Janusiewicz ("Janusiewicz"), Callaway, and C/O Colby Steele ("Steele") responded to the housing unit,[2] entered Hight's cell, secured him in handcuffs, and escorted him from the tier. (*Id.*)

The same day, plaintiff submitted a grievance stating that Neal had "put his hands" on him, scratched his neck, and punched him in the face. (D.I. 56 at 7) Plaintiff asked to press charges and stated that he was afraid for his life. (*Id.*) The grievance is marked received August 25, 2015 and was either returned or unprocessed. (D.I. 55-1 at 14) The grievance was forwarded to investigator Kendall Hickman ("Hickman"). (*Id.* at 14-15) Plaintiff submitted four other grievances regarding the matter. (D.I. 56 at 8-12) Plaintiff was told that the matter was being investigated but, as of March 14, 2016, he had not been told the results of the investigation. (*Id.* at 12)

---

[2]Hight was either housed in cell 321 or 322. Incident reports refer to both cells.

Hickman investigated the matter and prepared an undated administrative investigation report received at the SCI's warden office on September 8, 2015. (D.I. 55-1 at 19-21) Hickman interviewed plaintiff on August 25, 2015, who told him that after Hight had been removed from his cell, Neal returned to pack up Hight's personal items and grabbed plaintiff by his shirt (like a hockey fight) when plaintiff would not hold the door.[3] (*Id.* at 20) The report states that plaintiff did not mention injuries or having pictures taken.

The report states that Steele was present during the time plaintiff claims he was assaulted by Neal. (*Id.* at 20) Steele stated that he was downstairs when Neal went upstairs to pack Hight's personal items and at no time did Neal assault plaintiff. (*Id.*) The report concludes that Hight and plaintiff could have fabricated the story once Hight was returned to the cell he shared with plaintiff. (*Id.* at 21) Hickman found no evidence to support any use of force violations by prison staff. (*Id.*)

Inmate Quentin Jones' ("Jones") statement, dated August 20, 2015, states that when Neal demanded that plaintiff hold the door to cell 322, and plaintiff responded "that's not how you talk to people," Neal grabbed plaintiff around the front collar of his shirt, shoved plaintiff against the upstair guard rail, and told plaintiff to do what he said. (D.I. 56 at 16) At that point Steele told plaintiff to "hush" and "just do what he says do." (*Id.*) Neal then let plaintiff go into the cell to gather Hight's belongings.[4] (*Id.*)

---

[3]Hight was also interviewed, but his interview did not concern plaintiff's claims.

[4]The parties provide different versions on who gathered Hight's belongings. Hickman's report states that Neal gathered Hight's belongings, while Jones' statement is that plaintiff gathered Hight's belongings for Neal.

3

Inmate John Hellstern's ("Hellstern") February 25, 2017 unsigned statement states that Neal asked Scott to open cell 322, and Neal "went rogue" on plaintiff. (D.I. 56 at 18) According to Hellstern, Neal started to punch plaintiff "on what seem[ed] the neck and face area." (*Id.*) Neal then went into the cell and took Hight's things. (*Id.*) Hellstern heard plaintiff ask for medical help. (*Id.*)

Scott's affidavit states that when Neal arrived to secure Hight's personal property, plaintiff was present and in the cell.[5] (D.I. 55-1 at 23-24) Neal instructed plaintiff to exit the cell, and plaintiff left the cell but stayed within approximately one foot of the open door. (*Id.* at 24) When Neal asked plaintiff to hold the door open, plaintiff responded, "ask me nicely," and Neal repeated the request. (*Id.*) According to Scott, Neal did not shove or push plaintiff, but gently coaxed plaintiff towards the door, guiding plaintiff with his hand on the small of plaintiff's back. (*Id.*) Scott states that Neal never put his hands near plaintiff's upper body or throat/neck area. (*Id.*) Plaintiff held the cell door while Neal completed his task. (*Id.*)

Scott states that later that evening as he walked past plaintiff's cell, he could see plaintiff vigorously scratching his neck and bleeding where he had been scratching. (*Id.*) Plaintiff asked Scott, "do you see what Neal did to me?" (*Id.*) Scott replied that he was present during the entire time and that Neal did not do anything to plaintiff. (*Id.*) Scott states that at no time prior to his area check did he see that plaintiff had suffered any neck wounds or injuries, or that plaintiff's neck was bleeding. (*Id.*)

---

[5]Steele's affidavit similarly recounts the events of August 20, 2015. (*Id.* at 27-28)

4

Scott has no recollection of Callaway making any threats or attempting to injure plaintiff after the events of August 20, 2015 while plaintiff was housed in Unit 3. (*Id.* at 25) SCI accounting records from January 2015 through May 2016 (when plaintiff was transferred to the VCC) do not indicate the payment of wages to plaintiff for any employment position while he was housed at the SCI. (*Id.* at 30-31)

Mental health and medical records indicate that on August 20, 2015, plaintiff submitted a sick call slip to speak to mental health and he also stated that he had run out of medications. (D.I. 59 at 18-19) A 30-day supply of medication was ordered. (*Id.* at 19) Plaintiff presented to medical on August 23, 2015, with scratches and neck soreness and provided a history that he was in an altercation, his neck was scratched, and he was sore. (*Id.* at 12) Examination revealed three inch superficial scratches to the right side of the neck, clean, dry, and no infection. (*Id.*) Plaintiff was able to turn his neck in all directions without issue, but reported pain. (*Id.*) There was no noted redness or edema. (*Id.*) He was provided Motrin. (*Id.*) When plaintiff was seen at mental health on September 3, 2015, he stated that he was "okay," but the guards beat him up and Callaway stopped plaintiff from getting his medication. (*Id.* at 15) Plaintiff relayed that C/O Jankoswki[6] was the correctional officer that beat him up and that he had submitted a grievance. (*Id.*)

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[6]It is unknown if C/O Jankoswki and C/O Janusiewicz are the same person.

5

matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be--or, alternatively, is--genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The judge must ask not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252. The court must not engage in the making of "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts" as these "are jury functions, not those of a judge, [when] [] ruling on a motion for summary judgment." *E.E.O.C. v. GEI Group, Inc.*, 616 F.3d 265, 278 (3d Cir. 2010) (citation omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. at 247-48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Defendants move for summary judgment on the grounds that: (1) plaintiff has failed to establish a claim of use of excessive forced by Neal; (2) plaintiff has failed to establish a retaliation claim against Callaway; (3) Neal and Callaway are immune from suit under the Eleventh Amendment and the doctrine of sovereign immunity; and (4) plaintiff's claims are barred by the doctrine of qualified immunity.

7

## IV. DISCUSSION

### A. Excessive Force

Defendants argue that plaintiff has failed to establish an excessive force claim against Neal. To support their position, defendants point to inconsistencies among the allegations and "what the actual record shows." (D.I. 55 at 10) Plaintiff responds that there remain genuine issues of material fact.

Plaintiff's pretrial excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, __U.S.__, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). To demonstrate a due process violation, a detainee must prove "that the force purposely or knowingly used against him was objectively unreasonable," meaning "that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). The court considers: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id.; see also Robinson v. Danberg*, __ F. App'x, __, 2016 WL 7364148, at *2 (3d Cir. 2016) (court to consider all *Kingsley* factors in pretrial detainee excessive force claim).

Viewing the record in light of these factors, the court finds that plaintiff cannot prevail on his claim against Neal.[7] The record reflects that Neal either asked or ordered plaintiff to hold his cell door open and that plaintiff did not immediately follow this directive. Indeed, the record reflects that plaintiff refused the order because Neal did not ask plaintiff to hold open the door in a manner plaintiff deemed appropriate. There is varying evidence of what happened next. Neal either: (1) did nothing; (2) gently coaxed plaintiff towards the door and guided plaintiff with his hand on the small of plaintiff's back; (3) grabbed plaintiff by his shirt; (4) grabbed plaintiff around the front collar of his shirt, shoved plaintiff against the upstair guard rail, and told plaintiff to do what he said; (5) punched plaintiff on what seemed to be the neck and face area; or (6) put his hand on plaintiff, scratched plaintiff's neck, and punched plaintiff in the face.

The touchstone of a due process claim is whether the application of force was punitive. *See Kingsley*, 135 S. Ct. at 2473. Even when construing the evidence in the light most favorable to plaintiff, it cannot be said that Neal's use of force was objectively unreasonable. On the day of the incident, an altercation had occurred that involved plaintiff's cellmate. A short time later, plaintiff was ordered to exit their cell but, when he did, plaintiff remained in close proximity and, when ordered to hold open the cell door, plaintiff refused a direct order to do so. It was not until Neal either touched plaintiff in some manner or Scott convinced plaintiff to obey the order that plaintiff complied and held open the cell door. Given the previous events with plaintiff's cellmate and the apparent effort by correctional officers to maintain order in the housing unit, it was not

---

[7]The record reflects that in addition to Neal, plaintiff identified Jankowski as a correctional officer named in his grievance who beat him up.

9

unreasonable for Neal to perceive that plaintiff's actions posed a security risk or to take measures to ensure compliance with his direct orders and quell the perceived risk.

In addition, scenarios one through four discussed above do not lead to a conclusion that Neal touched plaintiff in a manner that caused any injuries to plaintiff's neck. As to scenarios four and five, there is no medical evidence that plaintiff sustained injuries to his face, only that he had scratches to his neck. Medical evidence indicates that three days after the August 20, 2015 incident, examination revealed plaintiff had three inch superficial scratches to the right side of the neck, clean, dry, with no infection, redness or edema, and that plaintiff was able to turn the neck in all directions without issue, but with pain. The medical records do not reflect any injury to plaintiff's face. Notably, when plaintiff was interviewed on August 25, 2015 regarding the incident, he made no mention of any injury. Although it is not required that plaintiff show he suffered more than a de minimis injury to maintain his excessive force claim, it is one factor the court considers. *See Kingsley*, 135 S. Ct. at 2473. Here, the injuries as documented in the medical records reflect that plaintiff suffered superficial scratches that are nothing more than de minimis physical injuries. *See Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) (unpublished) (de minimis physical injuries did not require any medical treatment after initial evaluation); *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001) (finding no Eighth Amendment violation when use of force caused superficial injury to prisoner's hand).

Having reviewed the evidence of record, no reasonable jury could find that Neal's actions were punitive or unreasonable, particularly in light of the fact that plaintiff refused to follow a direct order, that his refusal followed an incident where his cellmate

had been handcuffed and escorted from the tier, and that he sustained de minimis injuries. Accordingly, the court will grant defendants' motion for summary judgment as to the claims raised against Neal.

### B. Retaliation

Defendants argue that plaintiff failed to establish a retaliation claim against Callaway. Plaintiff contends that he was fired by Callaway after he submitted a grievance complaining that Neal had assaulted him.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). Proof of a retaliation claim requires plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce

11

a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

The record supports plaintiff's claim that he submitted a grievance on August 20, 2015 complaining of the actions taken by Neal, thus engaging in a form of protected speech. However, the evidence of record does not satisfy the second and third prongs of the prima facie test. While plaintiff argues that he was fired by Callaway in retaliation for submitting the grievance, he presents no evidence to support his position. Plaintiff, as the nonmoving party, may not simply assert factually unsupported allegations to meet his burden at the summary judgment stage. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

Conversely, defendants submitted evidence that plaintiff was not employed at SCI, making it impossible for Callaway to retaliate against plaintiff by terminating him from a non-existent job. Indeed, SCI accounting records from January 2015 through May 2016 do not indicate the payment of wages to plaintiff for any employment position while he was housed at the SCI. No reasonable jury could find for plaintiff on the retaliation claim raised against Callaway and, therefore, the court will grant defendants' motion for summary judgment.

### C. Eleventh Amendment

Finally, defendants move for summary judgment to the extent plaintiff raises

claims against them in their official capacities. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009) (unpublished). Therefore, the § 1983 claims for monetary damages are barred by the Eleventh Amendment. *See id.* Accordingly, the court will grant defendants' motion for summary judgment on the claims raised against them in their official capacities.

## V. CONCLUSION

For the above reasons, the court will: (1) grant defendants' motion for summary judgment (D.I. 54);[8] and (2) deny as moot plaintiff's motion to preserve evidence, motion to amend motion to preserve evidence, and request for counsel (D.I. 40, 44, 49).

A separate order shall issue.

---

[8]The evidence of record does not support a finding that plaintiff's constitutional rights were violated. Therefore, the court sees no need to address the issue of qualified immunity.